IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**WILLIAM JOSEPH HOGAN,**                                     **PETITIONER**

v.                              **CIVIL ACTION NO.: 3:13CV247-MPM-SAA**

**ERNEST LEE and ATTORNEY GENERAL**
**FOR THE STATE OF MISSISSIPPI,**                            **RESPONDENTS**

**MEMORANDUM OPINION AND ORDER**

Petitioner William Joseph Hogan, Mississippi prisoner no. 151816, has filed a pro se federal habeas petition pursuant to 28 U.S.C. § 2254 challenging his State court conviction for murder. Having considered the submission of the parties, the State court record, and the law applicable to Hogan's claims, the Court finds that the petition should be denied, for the reasons that follow.

**Background Facts and Procedural History**

William Hogan and Wendy Threatt had been married almost a year when Hogan fatally shot Wendy on Wednesday, August 27, 2008. The previous Saturday night, Wendy went out with co-workers and did not return home until Sunday afternoon. Hogan spent several days obsessing over where Wendy had been and what she had been doing. Wendy had been unfaithful to Hogan when they dated, and Hogan had threatened to kill her if she was ever unfaithful to him again. He suspected that Wendy had again been unfaithful, and for the next several days, she attempted to evade his questions about Saturday night. On Wednesday, while Hogan was at work, he and Wendy had a heated phone conversation. Afterwards, he told a co-worker who overheard the conversation that he was going to jail because he was going to shoot his wife.

That evening, Hogan and Wendy were in their bedroom and began discussing Saturday night. Wendy confessed that she had gone to a bar, where she flirted and danced with men. She confessed that she had charmed one man into allowing her to wear his cowboy hat. Hogan testified he "saw red" and "lost it" upon hearing Wendy's confession. He stated that he shot her in the face multiple times with a pistol he kept in the nightstand. Wendy's three children were in the house, so Hogan unloaded the pistol before returning it to the nightstand. He left the bedroom, closed the door, and told the children not to enter the room. He then called 911, telling the operator that he had just shot his wife.

Hogan pleaded not guilty to murder at his August 2009 trial. At trial, he called neuropsychiatrist psychiatrist Dr. Wood Hiatt, who opined that Hogan was temporarily insane at the time of the shooting. Dr. Hiatt noted that, two decades prior, Hogan had been badly injured when he pulled the pin on a live hand grenade and was hit by shrapnel. Over time, the shrapnel destroyed his liver, which required him to have a transplant. After the transplant, Hogan suffered anxiety and depression that resulted in a temporary hospitalization. He did not continue his treatment of medication or therapy upon discharge, and he began dating Wendy about a year after his release from the hospital. In rebuttal, the State called Dr. Criss Lott, who testified that Hogan knew the difference between right and wrong when he killed Wendy. The jury also heard testimony from Hogan's co-worker who testified that Hogan said that he was going to shoot his wife just hours before her death.

The trial court instructed the jury on both deliberate-design murder and the lesser-included offense of manslaughter. Hogan was convicted of murder in the Circuit Court of DeSoto County, Mississippi, and sentenced to serve life in the custody of the Mississippi

Department of Corrections. (SCR vol. 2, 203-04). He appealed his conviction and sentence to the Mississippi Supreme Court, which assigned the case to the Mississippi Court of Appeals. The Mississippi Court of Appeals affirmed Hogan's conviction and sentence. (*See* Answer, Ex. A); *see also Hogan v. State*, 89 So. 3d 36 (Miss. Ct. App. 2011), *reh'g denied* January 24, 2012, *cert. denied* May 24, 2012 (Cause No. 2010-KA-00345-COA).

Aggrieved of this decision, Hogan filed a pro se application with the Mississippi Supreme Court seeking permission to proceed in the trial court with a motion for post-conviction collateral relief. The Mississippi Supreme Court denied Hogan's application by order entered September 18, 2013. (*See* Answer, Ex. B).

On or about October 11, 2013, Hogan filed the instant federal habeas petition raising the following grounds for relief:

    I. Evidence was insufficient to support the conviction of deliberate design murder.
    II. Trial court erred in not granting new trial because the overwhelming weight of the evidence did not establish murder.
    III. Ineffective assistance of counsel during voir dire and the impaneling of the jury.
    IV. Ineffective assistance of trial and appellate counsel in failure to object to prosecutorial misconduct.
    V. Ineffective assistance of counsel in failure to object to instructions that failed to adequately instruct on the law.
    VI. The cumulative error of trial counsel's ineffectiveness denied Hogan his due process right to a fair trial.

## Legal Standard

The Court's review of Hogan's claims is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), because his federal habeas petition was filed after the statute's effective date. *See Lindh v. Murphy*, 521 U.S. 320 (1997). The AEDPA prevents the grant of federal habeas relief on any claim adjudicated on the merits in state court unless that adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable

3

application of, clearly established United States Supreme Court precedent; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the presented evidence. *See* 28 U.S.C. § 2254(d)(1) & (2); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

A state court's decision is "contrary to" Supreme Court law if (1) "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or (2) "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). The "unreasonable application" clause is reserved for decisions that either fail to identify the correct governing law, or identify the correct governing law but misapply it to the case. *Id*. at 407. Under this standard, a state court's decision will not warrant federal habeas relief unless its application of federal law is both incorrect *and* unreasonable. *Garcia v. Dretke*, 388 F.3d 496, 500 (5th Cir. 2004) (emphasis in original) (citation omitted). A reviewing habeas court considers only the state court's conclusion when determining whether there has been an unreasonable application of federal law, not the court's reasoning in reaching the decision. *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002).

Additionally, a state court's factual determinations are presumed correct unless rebutted by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also Jackson v. Anderson*, 112 F.3d 823, 824-25 (5th Cir. 1997).

## Discussion

### I. Sufficiency & Weight of the Evidence (Grounds One and Two)

Hogan claims that the evidence offered against him at trial was insufficient to support a verdict of guilty of deliberate design murder, and that the overwhelming weight of the evidence

did not establish murder. He argues that there was no evidence that he planned to kill his wife, and that Dr. Hiatt's testimony establishes that he was insane at the time of the crime.

On August 27, 2008, the Horn Lake Police Department received a 911 call from Hogan, and the tape of that call was admitted into evidence and played for the jury at Hogan's trial. (SCR vol. 3, 121, 135-36). Lieutenant Scott Worsham of the Horn Lake Police Department responded to the call and testified that Hogan was sitting on the tailgate of his truck when Worsham arrived on the scene. (*Id.* at 136). He testified that Hogan appeared calm and stated that his wife was in the bedroom. (*Id.* at 138). Officers found Wendy's body in the couple's bed. (*Id*. at 141-42). She had multiple gunshot wounds to her face. (*Id*.). Officers located the weapon in the nightstand, where Hogan stated it would be found. (*Id.*). Later, law enforcement determined that there were "eight holes in the face" of the victim. (SCR vol. 4, 172).

Hogan provided a statement to police, and Detective Roger Hutchins, the lead investigator on the case, testified that the "incident" began on Sunday and reached its resolution on Wednesday, when Hogan shot Wendy in response to something she said or some reason she gave him. (SCR vol. 4, 219). He noted that the body was found in a position that suggested she had been relaxed at the time of the shooting. (*Id.* at 208). He also testified that the gunshot wounds were in close proximity to each other, observing that it is necessary to re-aim after shooting a firearm in order to maintain accuracy. (*Id.* at 208-10).

David Dixon, who had been training Hogan for a job, testified that he was with Hogan on the day of the murder, and that Hogan fought with his wife over the phone during the course of the day. (SCR vol. 3, 146, 148). He testified that "Hogan was turning red, you know, and then he started hollering stuff and slammed the phone and looked over at me and says, 'I'm going to

5

jail tonight.' I said what? He said, 'I'm going to shoot the bitch right between the eyes.'" (*Id.* at 148).

Hogan testified on his own behalf. He denied making any statements about his wife to Dixon. (SCR vol. 4, 281). He stated that his wife had gone out with new co-workers the Saturday night before her death, and that he let her go despite the fact that he was "suspicious of her." (*Id.* at 282). He testified that she did not return until Sunday, which further raised his suspicions. (*Id.*). He stated that he tried to talk with her on Monday and Tuesday, but that she was defensive and uncommunicative. (*Id.* at 283-84). According to Hogan, he had a discussion with her on Wednesday night where she admitted to dancing and flirting with different men on Saturday night. (*Id.* at 284). He admitted that he had told his wife after an earlier indiscretion that he would kill her if she was ever unfaithful again, but that he said it "mainly to scare her." (*Id.* at 290). He also admitted that he had cleared the gun and removed the magazine after shooting his wife. (*Id.* at 297). He testified that he shot his wife, "walked out, shut the door, and told the kids don't go in there; don't look." (SCR vol. 5, 302).

Hogan called Dr. Wood Hiatt as an expert in neuropsychiatry. Dr. Hiatt testified that Hogan had found a live grenade at the age of 13, which he set off in front of his friends. (SCR vol. 4, 254). Hogan was injured by shrapnel and underwent a liver transplant a few years before the shooting of his wife. (*Id.* at 253). He suffered from depression following the transplant and, after several suicide attempts, was hospitalized for psychiatric treatment. (*Id.* at 254, 257). Dr. Hiatt testified that, during the interview, Hogan minimized his statement to Dixon and his previous threat to the victim. (*Id.* at 267-68). Dr. Hiatt ultimately opined, however, that "at the instant" he shot his wife, Hogan "did not know the difference between right and wrong." (*Id.* at

6

258).

In rebuttal, the State called psychiatrist Dr. Chris Lott, who had previously evaluated Hogan in connection with the case. Dr. Lott testified that his evaluation of Hogan revealed no history of Hogan engaging in bizarre or unusual behavior, and he opined that Hogan was in the average range of intelligence. (SCR vol. 5, 312, 318). He noted noted that depression does not render a person unable to know right from wrong, and he testified that Hogan was competent to stand trial. (*Id*. at 315, 318). Dr. Lott stated that Hogan "clearly understood" that the pistol was a weapon, and that he understood how to use the weapon. (*Id*. at 316). He opined that "closing the door, walking out of the room, [and] calling 911 was a clear indication that [Hogan] knew what he had done was wrong." (*Id.* at 316-17).

The jury was instructed that, in order to convict Hogan of murder, they must find that (1) Wendy Thweatt Hogan was a living person; (2) Hogan acted wilfully, unlawfully, and feloniously; (3) Hogan shot and killed the victim; and (4) he acted with deliberate design to effect the victim's death. (SCR vol. 2, 183).

The Court notes that Mississippi law provides that "[t]he killing of a human being without the authority of law by any means or in any manner shall be murder. . . when done with deliberate design to effect the death of the person killed, or of any human being." Miss. Code Ann. § 97-3-19(1)(a). In order to prove its case, the State had to prove beyond a reasonable doubt that Hogan killed Wendy without authority of law and with deliberate design to effect her death. *Hogan*, 89 So. 3d at 38 (citing *Brown v. State*, 965 So. 2d 1023, 1030 (Miss. 2007) (prosecution required to prove beyond reasonable doubt that defendant killed the victim without authority of law and with deliberate design to effect his death)).

On direct appeal, the appellate court determined that Hogan's argument concerning the sufficiency of the evidence was not really a claim that the State failed to prove a necessary element, but rather, an argument that he was unable to form a deliberate design to cause Wendy's death because he was temporarily insane at the time he shot her. *Hogan*, 89 So. 3d at 38-39. Noting that Hogan's sanity was a jury issue, the court found that the jury was free to reject Dr. Hiatt's testimony and determine Hogan was sane. *Id*. at 39. It found that determination supported by the evidence. *Id.*

The court also found that "the State presented sufficient evidence of the essential element of deliberate design. . . [which is] synonymous with 'malice aforethought.'" *Id*. at 39 (citations omitted). Citing Mississippi Supreme Court precedent, the court stated that "[d]eliberate design connotes an intent to kill and may be inferred through the intentional use of any instrument, which, based on its manner of use, is calculated to produce death or serious bodily injury." *Id*. (citation omitted). The court found that the testimony established that Hogan, who was experienced with guns, picked up a loaded pistol and fired multiple times into Wendy's head. *Id.* It found that the jury, having rejected the notion that Hogan was insane, "had sufficient evidence to find beyond a reasonable doubt that Hogan intended to kill Wendy." *Id.* Accordingly, it found sufficient evidence of deliberate design. *Id.*

The appellate court also considered Hogan's argument that the overwhelming weight of the evidence was against the jury's verdict. *Id*. at 40. The court noted that the jury received instructions on both murder and manslaughter and determined beyond a reasonable doubt that Hogan committed murder. *Id.* It rejected Hogan's argument that the overwhelming weight of the evidence established that Hogan killed Wendy "without a thought" of what he was doing

when he shot her. *Id.* at 40-41. Specifically, the court noted that the evidence in the light most favorable to the verdict established that Hogan told Wendy he would kill her if she was unfaithful to him, that he spent days obsessing about what Wendy had done the previous Saturday night, and that he told a co-worker he intended to shoot Wendy. *Id*. at 41. The court stated:

> While Wendy's disclosure about her actions on Saturday night might have triggered Hogan, causing him to 'see the color red,' there is evidence Hogan acted according to an already designed plan to kill Wendy once so triggered. That Hogan was resigned to the consequences of his plan - going to jail - and directly called the authorities after he killed her does not overwhelmingly weigh against a finding of deliberate design.

*Id.* at 41.

The Court determines that Hogan's allegation that the verdict is contrary to the weight of the evidence does not raise a constitutional issue, as the "weight" of the evidence is determined by the jury. *See Tibbs v. Florida*, 457 U.S. 31, 37-38 (1982) ("The 'weight of the evidence' refers to 'a determination [by] the trier of fact that a greater amount of credible evidence supports one side of an issue or cause than the other."); *see also Young v. Kemp*, 760 F.2d 1087, 1105 (11th Cir. 1985), *cert. denied*, 476 U.S. 1123 (1986) ("A federal court has no power to grant habeas relief because it finds that the state conviction is against the 'weight' of the evidence[.]"). Accordingly, Hogan is not entitled to habeas relief on his challenge to the weight of the evidence.

Insufficiency of evidence can support a claim for habeas relief, however. A challenge to the sufficiency of the evidence forms a basis for federal habeas relief only when the evidence, viewed in the light most favorable to the State, is such that no reasonable trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443

U.S. 307, 319 (1979) (quotations omitted). Under this standard, the fact-finder may find the evidence sufficient to support a conviction even if "the facts also support one or more reasonable hypotheses consistent with the defendant's claim of innocence." *Gilley v. Collins*, 968 F.2d 465, 468 (5th Cir. 1992); *see also United States v. Surtain*, 519 F. App'x 266, 274, 2013 WL 1846625 at *6 (5th Cir. May 2, 2013) ("The evidence need not exclude every reasonable hypothesis of innocence or be completely inconsistent with every conclusion except guilty, so long as a reasonable trier of fact could find that the evidence established guilty beyond a reasonable doubt.") (citation omitted)).

The facts recited above provide ample evidence from which a rational trier of fact could have found the essential elements of murder in this case beyond a reasonable doubt. The rejection of Hogan's claim was not "objectively unreasonable." *Coleman v. Johnson*, 132 S. Ct. 2060, 2062 (2012) (holding that *Jackson* claims "are subject to two layers of judicial deference," and that habeas relief may be granted only upon a finding that the rejection of the claim was "objectively unreasonable"). Further, the decision rejecting this claim was not based on an unreasonable determination of facts in light of the evidence presented at trial. Federal habeas relief is not warranted.

**II. Ineffective Assistance of Counsel (Grounds Three, Four, Five, and Six)**

Hogan alleges that he was denied the effective assistance of counsel at trial and on appeal. The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. *See, e.g., Yarborough v. Gentry*, 540 U.S. 1, 5 (2003). A federal habeas petitioner's claim that he was denied the effective assistance of counsel at trial is generally measured by the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668

(1984). To prevail on a claim of ineffective assistance of counsel, Hogan must establish that (1) his trial counsel's performance was so deficient that it cannot be said that he was functioning as "counsel" within the meaning of the Sixth Amendment, and (2) the deficient performance prejudiced his defense. *See id.* at 687; s*ee also Boyle v. Johnson*, 93 F.3d 180, 187 (5th Cir. 1996) (ineffective assistance of counsel claims analyzed under *Strickland* framework).

Where an attorney's representation falls below an objective standard of reasonableness as determined by professional norms, that performance is deficient. *See Rompilla v. Beard*, 545 U.S. 374, 380 (2005); *Strickland*, 466 U.S. at 687-89. Courts scrutinizing counsel's performance assume a "strong presumption" that the assistance was adequate and "that the challenged conduct was the product of reasoned trial strategy." *West v. Johnson*, 92 F.3d 1385, 1400 (5th Cir. 1996) (citation omitted). This presumption may be overcome if a petitioner can identify acts or omissions of counsel that were not the result of a reasoned, professional judgment. *See Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992). However, even unreasonable errors by counsel do not warrant relief if the errors did not affect the judgment. *See Strickland*, 466 U.S. at 691. Rather, actual prejudice results from the errors of counsel when there exists a reasonable probability that, but for the errors, the result of the proceeding would have been different. *Id.* at 694. A reasonable probability is one sufficient to undermine confidence in the outcome. *Id.*

The failure to prove either deficient performance by counsel or actual prejudice as a result of counsel's actions or omissions defeats a claim of ineffective assistance*. See Strickland*, 466 U.S. at 397; *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998); *Smith v. Puckett*, 907 F.2d 581, 584 (5th Cir. 1990). In a case where the state court has rejected the merits of a petitioner's ineffectiveness claims, such as here, the "pivotal question" in a federal habeas proceeding "is

11

whether the state court's application of the *Strickland* standard was unreasonable." *Harrington v. Richter*, ___ U.S. ___, 131 S. Ct. 770 (2011) (citations omitted).

**A. Voir Dire and Impaneling the Jury**

Hogan alleges that trial counsel was ineffective for allowing the impaneling of Jurors Staten (No. 19), Calvert (No. 105), Kline (No. 52), Bradford (No. 22), and Loftis (No. 79) at his trial. He contends that these five jurors had connections to law enforcement, and that Jurors Bradford and Loftis had family members who had been victims of violent crimes. He maintains that trial counsel should have had these jurors expound on their answers to expose potential bias.

During voir dire, Juror Staten (No. 19) stated that he had worked with the Corps of Engineers and had worked with some DeSoto County deputies. (SCR vol. 3, 30). Jurors Bradford (No. 22), Kline (No. 52), Loftis (No. 79), and Calvert (No. 105) indicated that they had family who had served in law enforcement. *(Id.* at 30-31). Jurors Loftis and Bradford additionally stated that they each had a family member who had been a victim of a violent crime. (*Id*. at 43, 47). Each stated that the experience would not affect his or her impartiality as a juror. (*Id*.). At the close of voir dire, the judge asked the venire whether there was any reason anyone felt he or she could not be fair, and none of the five jurors now challenged by Hogan responded. (*Id*. at 81-85).

A juror is biased if his "views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." *Soria v. Johnson*, 207 F.3d 232, 242 (5th Cir. 2000). Juror bias may be actual or implied. To prove an actual bias, "admission or factual proof" of the bias must be presented. *See United States v. Bishop*, 264 F.3d 535, 554 (5th Cir. 2001). While the jurors challenged by Hogan admitted connections to law

enforcement, and two indicated that they had relatives who were victims of crimes, each stated that he or she could be impartial and decide the case on its facts. Moreover, these individuals disclosed their familial relationships, and there is no basis upon which to presume bias in this case. *See, e.g., Solis v. Cockrell*, 342 F.3d 392, 395-99 (5th Cir. 2003) (discussing the "carefully watched limits" of the implied bias doctrine). Accordingly, Hogan has shown no deficiency by counsel in failing to strike these jurors, and he has not demonstrated that he was prejudiced by their inclusion on the jury.

Hogan has failed to demonstrate that the conclusion that his *Strickland* claim lacked merit is contrary to, or that it involves an unreasonable application of, clearly established federal law. He has not shown it to be a decision based on an unreasonable determination of facts in light of the evidence presented. Federal habeas relief is not warranted.

**B. Prosecutorial Closing Arguments[1]**

Hogan maintains that both trial and appellate counsel were constitutionally ineffective for failing to challenge portions of the prosecution's closing arguments. He maintains that the prosecutor used closing argument to argue facts outside of the evidence and interject inflammatory remarks that served to denigrate and vilify Hogan and his expert witness, Dr. Hiatt. Hogan contends that these improper, calculated remarks denied him of a fair trial by an impartial jury.

Hogan argues that the prosecution improperly attacked the credibility of Dr. Hiatt and improperly vouched for Dr. Lott by stating:

---

[1] Hogan failed to specify the challenged arguments in his petition. In his traverse, however, he identified the specific portions of the record that contain the statements that he is challenging. (*See, e.g.*, ECF no. 9, 9-11).

> A theory to a probability, and they stuck Dr. Hiatt on that stand using flawed logic and bad assumptions to reach a predetermined resolution. They went out and found some guy and just stuck him on the stand. He's done about 15 of those, of these mental evaluations trying to determine wether or not somebody falls under the strict *McNaughton* standard. Dr. Lott has done hundreds - - 150 this year or 150 last year. Who's credible? Who's believable? What makes sense? What makes sense?"

(Trial Tr. vol. 5, 391).

He further alleges that the prosecutor was allowed to denigrate Hogan's character:

> Is he a pitiable character? Does he care one iota about anything? You looked at him, ladies and gentlemen of the jury, when he was sitting right there. I know I saw it. I saw him try to cry. Y'all know what you saw. He tried and couldn't do it. He didn't care about her. Why did she do this to me? Why did Wendy Thweatt Hogan do this to Joe Hogan? Why? The world does not revolve around Mr. Hogan. He was upset that the world stopped - - [Wendy's] world stopped revolving around him for one day.

(*Id.* at 392).

Hogan maintains that the prosecutor also impermissibly vouched for the credibility of its own witnesses and improperly attacked Hogan's credibility by stating the following:

> David Dixon has no reason to lie, none whatsoever. He stood in front of you, looked at all of you, and said, 'William Joseph Hogan said I'm going to jail tonight for shooting the bitch between the eyes.' His words. Nobody put those words in his mouth. He said it. He said it pretty consistently.
>
> ***
>
> Detective Roger Hutchins sat there and testified under oath, swore to God, undisputed, by the way, that David Dixon called him or he spoke to David Dixon two days after the event, after this murder, on August 29th, and said the same thing[.]
>
> ***
>
> [Hogan's] the one with the reason to lie. He's the one with the reason to play up whatever problems he's had in his past.

14

(*Id*. at 374, 375, 382).

A prosecutor's remarks, even if improper, do not warrant habeas relief unless they "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). The petitioner bears the burden of demonstrating a reasonable probability that the result would have been different absent the remarks. *Nichols v. Scott*, 69 F.3d 1255, 1278 (5th Cir. 1995).

In the context of the prosecutor's entire closing argument, the comments challenged by Hogan were not improper. The prosecutor did not offer a personal opinion about the credibility of the witnesses. Rather, the prosecutor urged the jury to draw a particular conclusion (i.e., that the defense witnesses were not credible and the State's witnesses were) based on the evidence before the jury. The prosecutor's statements did not suggest that he knew information that the jury did not, and his argument was permissible. *See, e.g., United States v. Loney*, 959 F.2d 1332, 1343 (5th Cir. 1992) ("[I]t is well established that a prosecutor may recite to the jury those inferences and conclusions he wishes them to draw from the evidence[.]"); *see also United States v. McCann,* 613 F.3d 486, 495 (5th Cir. 2010) ("The test for improper vouching of for the credibility of a witness is 'whether the prosecutor's expression might reasonably lead the jury to believe that there is other evidence, unknown or unavailable to the jury, on which the prosecutor was convinced of the accused's guilt.). Accordingly, counsel did not perform deficiently in failing to object to the permissible argument. *See Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994) ("Failure to raise meritless objections is not ineffective lawyering, it is the very opposite.").

Even if the prosecutor's arguments were impermissible, however, Hogan has failed to show that the errors rendered his trial fundamentally unfair. Here, the jury was instructed to disregard statements of counsel that were unsupported by the evidence. (*See* SCR vol. 2, 187). The evidence of Hogan's guilt was not insubstantial. Accordingly, Hogan has failed to demonstrate that he was prejudiced as a result of counsel's failure to object to the prosecution's statements. Additionally, he has failed to demonstrate a deficiency by appellate counsel that prejudiced him, as counsel does not have a duty to raise every "colorable" claim on appeal. *Jones v. Barnes*, 463 U.S. 745, 751-54 (1985).

The Court finds that the decision rejecting this claim as without merit is neither contrary to, nor does it involve an unreasonable application of, clearly established federal law. Additionally, the decision was not based on an unreasonable determination of facts in light of the evidence. Federal habeas relief is not warranted.

**C. Jury Instructions**

Hogan alleges that trial counsel rendered ineffective assistance in failing to object to Jury Instructions Nos. 10 and 13. He contends that the instructions failed to adequately instruct the jury on the elements of deliberate design murder and failed to allow the jury to fully consider the lesser included offense of manslaughter.

The instruction given at trial as Jury Instruction 10 was originally proposed as Instruction S-1, to which the defense objected. (SCR vol. 5, 332). The instruction was withdrawn, and the State proposed Instruction S-2A, which was given, as amended, as Instruction 10. (SCR vol. 5, 344-45). This instruction set forth the elements of deliberate design murder and also set forth the elements of the lesser included charge of manslaughter. (SCR vol. 2, 183-85).

The parties offered a joint proposed instruction to the trial court that eventually became Instruction 13. (SCR vol. 5, 334, 337, 350, 355). Jury Instruction 13 instructed the jury on the definition of deliberate design. In informing the trial court they reached an agreement, the prosecution stated, "Your Honor, I rolled over like a puppy dog. It's essentially what [defense counsel] asked for in his instruction, with the addition of the deliberate design is synonymous with malice aforethought, language taken directly from the case cited by [defense counsel]." (*Id*. at 355). Jury Instruction No. 13 stated as follows:

> The Court instructs the jury that to prove that the defendant acted with malice aforethought, the State must prove beyond a reasonable doubt that the defendant acted with premeditation and deliberation. Deliberate design is synonymous with malice aforethought.
>
> Deliberation requires that an individual under the same circumstances as William Joseph Hogan, as shown by the evidence in this case, gave consideration to the intent to kill. There is no prescribed length of time for deliberation.
>
> A killing, even though intentional, committed on impulse in the heat of passion is without deliberation and without malice aforethought.

(SCR vol. 2, 198). The trial judge acknowledged that the instruction adequately addressed the law. (SCR vol. 5, 357).

Typically, the jury instructions given in a state criminal trial do not provide a basis for federal habeas relief. *See Galvan v. Cockrell*, 293 F.3d 760, 764 (5th Cir. 2002) (citing *Estelle v. McGuire*, 502 U.S. 62, 71 (1991)). They do so only where "prejudice of constitutional magnitude" resulted; that is, that the erroneous instruction "by itself so infected the entire trial that the resulting conviction violates due process." *Id*. at 764-65 (citation omitted).

The instructions given by the trial court track what the Mississippi Court of Appeals acknowledged is the applicable State law regarding deliberate design. *See Hogan*, 89 So. 3d at

17

39. Jury Instruction No. 10 also set forth the elements of the lesser included offense of manslaughter. Hogan's argument that the given instructions were somehow incomplete or inaccurate is without merit, and counsel was neither deficient, nor Hogan prejudiced, by the instructions given at his trial.

The State court's rejection of this claim was neither contrary to, nor did it involve an unreasonable application of, clearly established federal law. The decision was not based on an unreasonable determination of facts in light of the evidence. Federal habeas relief is not warranted.

### D. Cumulative Error

Hogan argues that trial and appellate counsel's cumulative errors deprived him of a constitutionally effective representation. Cumulative error is a recognized, independent basis for habeas relief only where "(1) the individual errors involved matters of constitutional dimensions rather than mere violations of state law; (2) the errors were not procedurally defaulted for habeas purposes; and (3) the errors 'so infected the entire trial that the resulting conviction violates due process.'" *Westley v. Johnson*, 83 F.3d 714, 726 (5th Cir. 1996) (citing *Derden v. McNeel*, 978 F.2d 1453, 1454 (5th Cir. 1992)). Hogan has not shown that the alleged errors combined to cast doubt on whether his verdict satisfied due process. In fact, he has not demonstrated constitutional error at all. The State court's decision rejecting this claim is neither contrary to, nor does it involve an unreasonable application of, clearly established federal law. Further, it is not based upon an unreasonable determination of the facts in light of the evidence presented at trial. Federal habeas relief is not warranted.

**Certificate of Appealability**

Hogan must obtain a certificate of appealability ("COA") before appealing this Court's decision denying federal habeas relief. 28 U.S.C. § 2253(c)(1). A COA will not issue unless Hogan makes "a substantial showing of the denial of a constitutional right" of any claim rejected on its merits, which he may do by demonstrating that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). To obtain a COA on a claim that has been rejected on procedural grounds, Hogan must demonstrate "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484. Applying this standard, the Court concludes that a COA should be denied in this case.

**Conclusion**

It is hereby ordered that Hogan's petition for a writ of habeas corpus is **DENIED** and **DISMISSED WITH PREJUDICE**. A certificate of appealability is **DENIED**. A judgment in accordance with this opinion and order will issue today.

SO ORDERED, THIS the 24th day of January, 2014.

/s/ Michael P. Mills
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF MISSISSIPPI**